*Hector Rodriguez v. State of Maryland*, No. 1530, September Term, 2021.  Opinion by Getty, Joseph M., J.

**HEADNOTES:**

CRIMINAL LAW & PROCEDURE – FOURTH AMENDMENT – WARRANTLESS SEARCHES – SEARCH INCIDENT TO ARREST – *ARIZONA V. GANT*

*Arizona v. Gant*, 556 U.S. 332 (2009), allows police, without a warrant, to "search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  When the State relies on the second part of the exception—where it is reasonable to believe the vehicle contains evidence of the offense of arrest—the police may search the glove compartment after a defendant has been arrested for stolen tags because it is reasonable to believe that the compartment will contain motor vehicle records—such as a registration card—which would be relevant to the offense of arrest.

CRIMINAL LAW & PROCEDURE – FIFTH AMENDMENT – *MIRANDA V. ARIZONA* – CUSTODY

*Miranda* warnings are required when a suspect is in custody and is being interrogated. *Miranda* warnings are not required when an officer approaches a suspect in a shopping center parking lot and asks two questions—whether a vehicle belongs to the suspect and how the suspect obtained the license plate on the vehicle—because the suspect is not in custody under those circumstances.

Circuit Court for Anne Arundel County
Case No. C-02-CR-21-000839

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 1530

September Term, 2021

_____

HECTOR MIGUEL RODRIGUEZ

v.

STATE OF MARYLAND

_____

Reed,
Albright,
Getty, Joseph M.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Getty, J.

_____

Filed: June 1, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

This appeal involves two issues. The first issue is the permissible scope of the search incident to arrest exception under *Arizona v. Gant* that allows "a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" 556 U.S. 332, 343 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)). Specifically, we must determine whether a police officer may search the glove compartment of the defendant's vehicle for additional evidence without a warrant after arresting the defendant for theft of license plates.

The second issue involves whether an officer's failure to give *Miranda*[1] warnings to the defendant requires the defendant's statements to be suppressed. We must consider whether an officer must provide *Miranda* warnings before asking the defendant two questions—about the vehicle and the stolen license plates—during a brief encounter in a shopping center parking lot.

Appellant Hector Rodriguez appeals the trial court's denial of his motion to suppress a regulated handgun found in his vehicle's glove compartment during a warrantless search and to suppress statements that he made to the arresting police officer. While preserving his right to appeal the denial of the motion to suppress, Rodriguez proceeded to trial on an agreed statement of facts in the Circuit Court for Anne Arundel County and was convicted of possession of a regulated firearm by a person under the age of 21.

Rodriguez now appeals the denial of his motion to suppress and presents one question for review: "Did the circuit court err in denying Appellant's motion to suppress?"

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Rodriguez argues that the circuit court erred in finding the warrantless search of his vehicle justified. He contends that the police officer was not looking for additional evidence of the crime of his arrest—for stolen license plates—but for evidence of a different crime altogether—theft of a vehicle. Thus, Rodriguez asserts that the warrantless search of his vehicle was not justified as a search incident to arrest.

In response, the State maintains the police officer had reason to believe that the vehicle contained additional evidence of the crime for which Rodriguez was arrested. One of the stolen license plates was visibly located on the floorboard of Rodriguez's front passenger seat. The State's first argument is that this license plate allowed the officer to seize the license plate and search the remainder of the passenger compartment of the vehicle. Alternatively, the State argued that it was reasonable to believe that a registration card would be stored in the glove compartment of Rodriguez's vehicle and that a registration card is additional evidence of the crime for which Rodriguez was arrested.

On the second issue, Rodriguez asserts that his answer to the officer's question about the license plates should have been suppressed because he was not administered *Miranda* warnings. Rodriguez argues that he was in custody at the time the officer questioned him because the officer had probable cause to arrest him prior to the questioning. The State counters that *Miranda* warnings were not required because Rodriguez was not in custody for purposes of *Miranda*.

For the reasons set forth below, the suppression hearing judge did not err in denying the motion to suppress. Therefore, we affirm the judgment of the Circuit Court for Anne Arundel County.

## FACTS AND PROCEDURAL HISTORY

Corporal John McGroarty ("Cpl. McGroarty") of the Anne Arundel County Police Department was on patrol on the morning of May 7, 2020, in a marked police vehicle equipped with an automated license plate recognition system ("ALPR"). He was traveling on Laurel Fort Meade Road when his vehicle passed a 2002 Volkswagen GTI proceeding from the opposite direction, which caused the ALPR to alert to its rear license plate as stolen. After the alert, Cpl. McGroarty verified with the National Crime Information Center that the rear license plate was stolen.

By then, the Volkswagen GTI had turned onto Red Clay Road and disappeared. After a five-to-seven-minute search, Cpl. McGroarty located the vehicle parked and unoccupied near the Target store in the Corridor Marketplace shopping plaza. Cpl. McGroarty, who was in full uniform, parked his marked patrol car in the aisle of the parking lot past the Volkswagen GTI in a manner that, according to the officer, did not box it in.

There was no one in the vehicle when Cpl. McGroarty walked up to the Volkswagen GTI and initially confirmed that this was the same vehicle and license plate that caused the ALPR to alert. He then started walking toward the front of the vehicle but noticed that the matching license plate was located inside the vehicle on the floor of the front passenger seat instead of being mounted on the front of the vehicle.

Cpl. McGroarty returned to his car where he observed an individual, later identified as Hector Miguel Rodriguez, walk towards the Volkswagen GTI and unlock the doors using the key fob. Exiting his marked police vehicle, Cpl. McGroarty met Rodriguez at the rear corner of the vehicle on the driver's side. Cpl. McGroarty asked Rodriguez if he

owned the vehicle and how he obtained the license plates. Rodriguez responded that he did own the vehicle and that he had bought the license plates from a friend in Riverdale. Cpl. McGroarty then handcuffed Rodriguez and placed him under arrest but did not administer *Miranda* warnings during this encounter.

After placing Rodriguez under arrest, Cpl. McGroarty searched the vehicle. He retrieved the license plate from the front passenger floorboard. He also searched the front passenger glove compartment where he seized a silver Hopkins and Allen Special Police .32-caliber revolver that was unloaded. Rodriguez was 20 years old and did not have a permit to carry a handgun. Therefore, he was charged with theft of the license plates, possession of a regulated firearm by a person under the age of 21, and transporting a handgun in a vehicle.

Before trial, Rodriguez filed a motion to suppress the handgun found in the glove compartment and his statement that he had bought the license plates from a friend. At the suppression hearing, the court denied the motion, stating,

> [Corporal McGroarty] waited by the vehicle, spoke to Mr. Rodriguez, who had voluntarily walked to his parked car. He asked him the two questions: one, whether or not he owned the car; and then also . . . where he received the license plates from.
>
> The conversation was very short. He pulled his marked patrol vehicle and parked in a manner which would not preclude Mr. Rodriguez from leaving. He also didn't initiate any emergency lights or any other emergency equipment.
>
> So based on all of that, I find that the Corporal's actions up to the time moment [sic], including the questioning, amounted to an accosting and not a Terry stop or an arrest, as there was no physical force or show of authority used.

The court continued,

-4-

So moving on to the search of the vehicle as it related to going into the glove compartment and finding the handgun, so with respect to an automobile search following a valid arrest, the police may search the passenger compartment of the car as a search incident to arrest, but only if—and the one that is applicable here—of course, there's two, but I'm going to focus on the second one—the police have reason to believe that the vehicle contains evidence relevant to the crime for which the individual was arrested. And as you know, that's the *Arizona v. Gant* case.

So the police, again, may search the passenger compartment of the vehicle incident to the recent arrest if the vehicle contains evidence of the offense of the arrest. Here, Corporal McGroarty testified that he searched the car, looking for—after arresting Mr. Rodriguez and after Mr. Rodriguez was arrested for possession of stolen tags—for additional evidence related to that arrest.

That is proper under the case law. As a result, I find that that search was proper.

Rodriguez waived his right to a jury trial and proceeded in a bench trial with a plea of not guilty to an agreed statement of facts on the condition that he preserved his right to appeal the denial of his motion to suppress. The court found Rodriguez guilty of possession of a regulated firearm by a person under the age of 21. The State entered a *nolle prosequi* on the remaining charges. The court sentenced Rodriguez to three years, suspended, with two years of supervised probation. This appeal followed.

## STANDARD OF REVIEW

When reviewing a circuit court's denial of a motion to suppress evidence, we are "limited to the record developed at the suppression hearing." *Moats v. State*, 455 Md. 682, 694 (2017). "We review the evidence and the inferences drawn therefrom in the light most favorable to the prevailing party." *Thornton v. State*, 465 Md. 122, 139 (2019). As a "mixed question of law and fact[,]" we accept "the hearing court's findings of fact unless they are clearly erroneous" but "review the hearing judge's legal conclusions *de novo*[.]"

*Id.* (citations omitted). Thus, we independently evaluate without deference to the circuit court whether a police officer's conduct violated the constitutional rights of the defendant. *Sizer v. State*, 456 Md. 350, 362 (2017).

**SEIZURE OF HANDGUN**

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.[2] State-conducted searches and seizures, without a warrant, "are presumptively unreasonable and, thus, violative of the Fourth Amendment." *Thornton*, 465 Md. at 141. The State bears the burden of proving that a warrantless search or seizure is reasonable. *Id.* Evidence obtained in violation of the Fourth Amendment "will ordinarily be inadmissible in a state criminal prosecution pursuant to the exclusionary rule." *Id.* at 140.

"A warrantless search . . . is presumptively unreasonable," *Henderson v. State*, 416 Md. 125, 148 (2010), but "may be deemed reasonable if the circumstances fall within 'a few specifically established and well-delineated exceptions.'" *Pacheco v. State*, 465 Md. 311, 321 (2019) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Two such exceptions are relevant to this case: the search incident to arrest exception and the

---

[2] Article 26 of the Maryland Declaration of Rights also protects Marylanders against unreasonable searches and seizures. The Supreme Court of Maryland has generally held that the protections of the two provisions are co-extensive. *E.g.*, *Gahan v. State*, 290 Md. 310, 319–22 (1981). In any event, Rodriguez has not made an argument based on Article 26, so our decision is based on the federal provision only.

automobile exception.  The State primarily relies on the search incident to arrest exception to justify the warrantless search of Rodriguez's vehicle.

## A.  Search Incident to Arrest Exception

The search incident to arrest exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."  *Gant*, 556 U.S. at 338.  In *Gant*, the U.S. Supreme Court announced that the exception "permit[s] an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 346.

The Supreme Court of Maryland[3] described the historical progression of the search incident to arrest exception in *Taylor v. State*, 448 Md. 242 (2016).  The Court noted that "*Gant* was intended to clarify the scope of that exception in the context of a motor vehicle search." *Id.* at 246.  The Court explained that prior to *Gant*, the search incident to arrest in the vehicular context was governed by *Chimel v. California*, 395 U.S. 752 (1969), and *New York v. Belton*, 453 U.S. 454 (1981). *Id.  Chimel* "limited the scope of a warrantless search incident to an arrest to the arrestee's person and the area within his or her 'immediate control'—the area 'from within which he [or she] might gain possession of a weapon or destructible evidence.'" *Id.* (quoting *Chimel*, 395 U.S. at 763).

---

[3] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland.  The name change took effect on December 14, 2022.  We will use the term "Supreme Court" when referring to decisions from the former Court of Appeals and the term "U.S. Supreme Court" when referring to decisions from the United States Supreme Court.

In *Belton*, the U.S. Supreme Court created a bright-line rule in the automobile context that "when an officer lawfully arrests the occupant of an automobile, the officer, as a contemporaneous incident of that arrest, may search the passenger compartment of the car and any containers therein." *Id.* at 247. Many courts throughout the country had "widely understood [*Belton*] to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Id.* at 247 (quoting *Gant*, 556 U.S. at 341). The *Gant* Court rejected this interpretation. *Id.* Instead, it explained that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343 (footnote omitted).

The *Gant* holding expands the exception stating that, "although it does not follow from *Chimel*, 'circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence **relevant to the crime of arrest** might be found in the vehicle."'" *Taylor*, 448 Md. at 248 (quoting *Gant*, 556 U.S. at 343). Thus, from *Gant*, the search incident arrest exception has come to allow police to "search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *Gant*, 556 U.S. at 351.

It is the second part of the exception—the reasonableness of believing the vehicle contains evidence of the offense of arrest—on which the State relies in Rodriguez's case. In *White v. State*, 248 Md. App. 67, 97–98 (2020), this Court explained how this part of

the exception is both similar and dissimilar to the automobile exception (or *Carroll*[4]

doctrine):

> Like the *Carroll* Doctrine, it authorizes the search of an automobile for evidence of crime upon a likelihood that such evidence is present in the car. Whereas the *Carroll* Doctrine requires that the likelihood satisfy the probable cause standard, the *Arizona v. Gant* special exception lowers the bar of likelihood to one of reasonable suspicion. The *Arizona v. Gant* exception, on the other hand, does insist, unlike the *Carroll* Doctrine that the likelihood occurs in conjunction with an arrest. Whereas the *Carroll* Doctrine permits a search of the entire car including the trunk, the *Arizona v. Gant* exception limits the search to the passenger compartment. Whereas the *Carroll* Doctrine places no limits on the character of the suspected evidence, the *Arizona v. Gant* exception limits the predicate for the search to "evidence of the offense of arrest."

The *Gant* Court noted that the search incident to arrest exception is narrower than the

automobile exception, which "authorizes a search of any area of the vehicle in which the

evidence might be found." *See Gant*, 556 U.S. at 347 (citing *United States v. Ross*, 456

U.S. 798, 820–21 (1982)).

The Supreme Court of Maryland most recently considered the search incident to

arrest exception in *Pacheco v. State*, 465 Md. 311 (2019). There, the Court considered

whether the possession of a joint and the odor of marijuana in the post-decriminalization

era could justify the search of a person under the search incident to arrest exception. *Id.* at

320. The Court dealt primarily with the "condition precedent" of probable cause to make

---

[4] *Carroll v. United States*, 267 U.S. 132 (1925). The automobile exception "authorize[s] the warrantless search of a vehicle if, at the time of the search, the police have developed 'probable cause to believe the vehicle contains contraband or evidence of a crime.'" *Pacheco v. State*, 465 Md. 311, 321 (2019) (quoting *Johnson v. State*, 458 Md. 519, 533 (2018)).

the arrest before police could conduct a warrantless search of the individual. *Id.* at 323. It explained that "before a person can be lawfully arrested and searched incident thereto the focus must be on the likelihood of the 'guilt of the arrestee[.]'" *Id.* at 325 (citation omitted). It emphasized that "the officers must have possessed, *before* the search, probable cause to believe that [the defendant] was committing a felony or a misdemeanor in their presence." *Id.* at 330.

Ultimately, the Court concluded that police officers' observations of a marijuana joint and the presence of marijuana odor did not rise to the level of probable cause to believe an individual possessed a criminal amount of marijuana. *Id.* at 330–33. Accordingly, there was no probable cause to justify an arrest, and thus, the police could not conduct a warrantless search incident to a lawful arrest. *Id.* at 333.[5]

---

[5] The Court did, however, decide that the marijuana joint and odor would justify a warrantless search under the automobile exception because the marijuana, while decriminalized, still constituted contraband. *Pacheco*, 465 Md. at 330. According to the Court, this result is justified in part by "the diminished expectation of privacy" in one's vehicle compared to one's person. *Id.* at 325–26.

During the 2023 legislative session, the General Assembly addressed this issue in the context of the legalization of marijuana and enacted House Bill 1071, effective July 1, 2023, which became law without the Governor's signature. H.B. 1071, 2023 Leg., 445th Sess. (Md. 2023) ("H.B. 1071"); Press Release, *Governor Moore Issues 2023 Legislative Session Vetoes*, The Office of Governor Wes Moore (May 19, 2023), https://governor.maryland.gov/news/press/pages/Governor-Moore-Issues-2023-Legislative-Session-Vetoes.aspx [https://perma.cc/J4KB-9HG3]. The "bill prohibits a law enforcement officer from (1) initiating a stop or search of a person, motor vehicle, or vessel based solely on specified types of cannabis-related evidence and (2) conducting a search of specified areas of a motor vehicle or vessel during an investigation of a person solely for driving a motor vehicle or vessel while impaired by or under the influence of cannabis." Dep't Leg. Servs., *Fiscal and Policy Note: Third Reader – Revised*, H.B. 1071, at 1 (2023 Session). Specifically, an "officer may not initiate a stop or a search of a person, a motor

Considering these cases together, a clearer picture of the search incident to arrest exception emerges. *Pacheco* reminds us that, for the exception to apply, there must first exist probable cause to arrest *before* conducting the search. *Taylor* demonstrates that two scenarios will trigger the application of the search incident to arrest exception: where an arrestee is within reaching distance of the vehicle and where the police have reason to believe the vehicle contains evidence of the crime of arrest. Finally, *White* clarifies the distinct rules and requirements of the exception in the vehicular context. First, there must be an arrest in conjunction with the search, and, as *Pacheco* reiterated, this arrest must be supported by probable cause. Second, the part of the exception allowing a search for evidence of the crime of arrest applies only to vehicular searches. Third, the exception requires the lower standard of reasonable suspicion, rather than probable cause, that the vehicle contains evidence of the crime. Fourth, the search incident to arrest must be limited to the passenger compartment. Fifth, the search is limited to evidence of the offense for which the defendant is arrested.

*1. Parties' Contentions*

Rodriguez argues that the circuit court incorrectly determined that the warrantless search of his vehicle was justified by the second *Gant* rationale—where "it is reasonable

---

vehicle, or a vessel based solely on one or more of the following: (1) the odor of burnt or unburnt cannabis; (2) the possession or suspicion of possession of cannabis that does not exceed the personal use amount, as defined under § 5-601 of the Criminal Law Article; or (3) the presence of cash or currency in proximity to cannabis without indicia of an intent to distribute." H.B. 1701.

to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. Rodriguez contends that the court erred because Cpl. McGroarty was not looking for additional evidence of the crime for which he was arrested—the theft of the license plates. Instead, according to Rodriguez, Cpl. McGroarty was looking for evidence that the vehicle was stolen—a separate crime from the crime for which he was arrested.

To support this contention, Rodriguez points to Cpl. McGroarty's testimony at the suppression hearing. When asked by the prosecutor what additional evidence he was looking for in the search of the vehicle, the follow exchange took place:

| [State:] | You're inside the car. You had retrieved the one license plate. What else are you looking for? |
|---|---|
| [McGroarty:] | Additional evidence. |
| [State:] | Additional evidence for what? |
| [McGroarty:] | Of the crime. |
| [State:] | Of the crime of stolen license tag? |
| [McGroarty:] | Stolen license plates. Yes, sir. |
| [State:] | Okay. And you haven't—I mean, is there anything that you can think of that you might find that would encompass that? |
| [McGroarty:] | At that point, I wasn't able to confirm the vehicle was stolen or not. So just—there could be other, you know, evidence of a crime at that point. |

Rodriguez argues that this exchange demonstrates that Cpl. McGroarty improperly searched his glove compartment because he was looking for evidence of a stolen vehicle, instead of stolen license plates. He maintains that the search should have ended when Cpl. McGroarty had seized the stolen license plates because, at that point, he could not have expected to find additional evidence of that crime.

The State disagrees on the permissible scope of a search incident to arrest and maintains that the circuit court did not err. The State argues that where there is reason to believe the vehicle contains evidence of the crime for which a defendant is arrested, the police may search the passenger compartment and containers therein for such evidence. The State contends that Cpl. McGroarty's search of Rodriguez's vehicle was justified because the front license plate was located on the floorboard of the vehicle, thus giving him reason to believe the vehicle contained evidence of the crime for which Rodriguez was being arrested. The State disagrees with Rodriguez that the search of the glove compartment was distinct from the officer seizing the front license plate. In the State's view, once Cpl. Rodriguez had reason to believe the stolen front license plate was in the vehicle, he was permitted to search the passenger compartment and its containers, including the glove compartment.

Alternatively, the State argues that the additional evidence in the glove compartment that Cpl. McGroarty sought was the vehicle registration card. As argued by the State at the suppression hearing, the vehicle's registration card would provide additional evidence whether the license plates did or did not belong to the Rodriguez vehicle. The State proffers that this would satisfy the requirement that Cpl. McGroarty had reason to believe additional evidence of the crime was located in the glove compartment.

2. *Analysis*

At trial, the case proceeded upon an agreed statement of facts, and there were no material disputes regarding the relevant facts. Rodriguez concedes that Cpl. McGroarty had probable cause to arrest him for the stolen license plates once he knew the car belonged

-13-

to Rodriguez. The issue is purely one of law: whether the officer's search of the car incident to arrest for stolen plates was permissible under the U.S. Supreme Court's holding in *Arizona v. Gant* and could "reasonably lead to an expectation that further evidence **of that offense may** be found in the passenger compartment." *See Taylor*, 448 Md. at 248.

"[T]he *Arizona v. Gant* exception limits the predicate for the search to 'evidence of the offense of arrest.'" *White*, 248 Md. App. at 97–98. In *Taylor*, the Supreme Court considered whether an arrest for driving under the influence of alcohol justified a search under *Gant*. *Taylor*, 448 Md. at 248. There, the Court said that there must be "some basis in fact" to support the officer's suspicion that the vehicle contains evidence of the crime of arrest. *Id.* at 250. The Court declined to conclude that certain offenses would generate a *per se* right to search under *Gant* but did comment that "in most cases of an arrest for driving under the influence, there is likely to be, a basis in fact . . . which can be articulated, of finding open containers or other evidence related to the offense inside the passenger compartment." *Id.* at 250–51. In reaching this conclusion, the Court reasoned that "[i]t is a solid part of 'reasonable articulable suspicion' law that reasonable suspicion may be derived from an officer's own experience or his or her knowledge of the experience of other officers." *Id.* at 251.

In contrast, this Court held in *White* that it was not reasonable to search the vehicle after the defendant's arrest for a carjacking that had occurred 18 days prior. 248 Md. App. at 101. The Court reasoned that "there was no indication in this record to suggest . . . that [the handgun used in the carjacking] was located within the leased vehicle [the defendant] was driving on the day he was arrested." *Id.* In that case, the defendant was arrested

pursuant to a warrant rather than "a summary arrest based on conduct" and supported by probable cause. *Id.* at 102. Thus, this Court agreed with the circuit court below that the search was "both geographically and temporally . . . too attenuated to apply . . . *Gant.*" *Id.*

In this case, we accept the State's narrower justification for conducting a warrantless search of Rodriguez's vehicle and conclude that the officer had reason to believe that there would be evidence of the crime of arrest—for stolen license plates—inside Rodriguez's glove compartment. Although Cpl. McGroarty testified at the suppression hearing that he was looking for evidence of the vehicle being stolen, he also affirmatively stated that he was searching for additional evidence of the crime of stolen license plates. Additionally, his inability to articulate the exact object of his search does not diminish the reasonableness of the search. *See United States v. Edwards*, 769 F.3d 509, 516 (7th Cir. 2014) ("The reasonableness of a search does not depend on the officer's subjective motivations; the inquiry is, of course, *objective*.").

At the suppression hearing, the State made the following argument to the circuit court judge:

> [Corporal McGroarty] has every right to go [into Rodriguez's vehicle] and look for any other indicia that might indicate that the Defendant—that either the tags are stolen and the Defendant either had more knowledge of it or other knowledge of the stolen tags or the possibility that the car might have been stolen.
>
> &ast;  &ast;  &ast;
>
> [T]he State does believe that the officer had every right . . . to then enter the vehicle, take the tags, and then do an additional search. I think if looking for something in the nature of the search, the officer can open any container when he's inside the vehicle.

Glove box, it's been deemed to be a container, and that, therefore, he can open that container or the glove box to see. And as the Court well is aware, knows that a lot of times people stick registration and other paperwork inside the glove box. And I think, essentially, that's what the officer had been looking for, of course, any additional paperwork in the nature of his investigation.

Based upon the testimony and argument at the suppression hearing, it is clear that Cpl. McGroarty had "some basis in fact" for his suspicion that Rodriguez's vehicle contained additional evidence of the crime for which he was arrested. *See Taylor*, 448 Md. at 250. Rodriguez was arrested for the stolen license plates. Cpl. McGroarty was justified in entering the vehicle to retrieve the front license plate from the passenger floorboard because the number matched the plate on the rear of the vehicle, which the officer had confirmed to be stolen.

Stolen license plates necessarily involve motor vehicle records, which makes Rodriguez's motor vehicle documents relevant to his crime of arrest. Just as the Supreme Court concluded in *Taylor* that "most cases" involving driving under the influence would provide reason to believe there is evidence of the crime in the vehicle, 448 Md. at 250–51, we also conclude that cases involving a stolen license plate will often provide the basis to search for any motor vehicle records the car may contain. As the State explained in its brief, a registration card in Maryland contains the vehicle owner's name and the vehicle's registration number assigned by the Motor Vehicle Administration. Md. Code (1977, 2020 Repl. Vol.), Transp. ("TR") § 13-408. The Maryland motor vehicle statutes require that vehicles have properly registered license plates and the corresponding registration card. TR § 13-701(a). The registration card to Rodriguez's vehicle would establish whether the

-16-

license plates did or did not match the registration card within the vehicle, which could establish knowledge of the crime on the part of Rodriguez. This justifies the officer's decision to search for the vehicle's motor vehicle records related to the license plates it displayed.

Indeed, an officer's personal experience or the collective experience of officers informs the reasonable suspicion to believe that the vehicle contains additional evidence. *Taylor*, 448 Md. at 251. As the State delineated at the suppression hearing, common practice supports an officer's instinct to search for additional evidence of stolen license plates in the glove compartment where vehicle owners often keep their registration card. *See United States v. Mensah*, 737 F.3d 789, 795 (1st Cir. 2013) ("[T]he passenger compartment of a car is 'by custom and necessity[] a common repository for motor vehicle-related documents.'").

Other jurisdictions have reached the same conclusion under similar circumstances. In *United States v. Edwards*, the defendant "was arrested for . . . driving a vehicle without the owner's consent." 769 F.3d at 514 (citing statutory criminal offense). Approving a search of the vehicle that recovered a sawed-off shotgun, the 7th Circuit reasoned that "it was entirely reasonable to believe that evidence of the offense of driving a vehicle without the owner's consent would be found in the [vehicle]" because "registration and title documents are evidence of ownership and are often kept in a car." *Id.* at 515. Similarly, in *United States v. Campbell-Martin*, after the defendant was arrested "for providing false identification information[,]" the officer searched "a backpack on the floor of the front-seat passenger area." 17 F.4th 807, 812 (8th Cir. 2021). The 8th Circuit approved the search

under the search incident to arrest exception, concluding that the backpack "was a logical place to look for identification such as a driver's license, mail, receipts, credit cards, or checks." *Id.* at 816. Thus, where identification documents are relevant to the crime of arrest, an officer is justified in searching parts of the vehicle where it is logical for them to be kept.

The underlying conduct for Rodriguez's arrest was closely connected to the search of his vehicle. While we cannot say when the actual theft of the license plates occurred, this is not a case like *White* where the lapse of time after the crime reduced the certainty that there would be evidence in the vehicle. In this case, Rodriguez's vehicle was actively displaying the stolen license plates. A vehicle being driven is required to be registered, TR § 13-401(b)(1), and may not display inaccurate license plates or a false registration card. TR § 13-703(f)-(g). Accordingly, Rodriguez's conduct of displaying stolen license plates was closely connected to the warrantless search.

We conclude that Cpl. McGroarty's search of Rodriguez's vehicle did not exceed the scope of a permissible search under *Gant*. The officer had probable cause to arrest Rodriguez for the stolen license plates. It was also reasonable for the officer to believe there would be additional evidence of that crime inside Rodriguez's vehicle. The officer saw the second stolen license plate on the floorboard of the vehicle. While this second license plate is additional evidence of the crime, it is not the only additional evidence of the crime that is likely to be found in the vehicle. We are persuaded that motor vehicle records which are often stored in the glove compartment are also relevant additional

evidence.  For these reasons, Cpl. McGroarty's search of the glove compartment in Rodriguez's vehicle was justified under the second rationale of *Arizona v. Gant*.

Notwithstanding this holding, we explicitly reject the State's *carte blanche* argument that, after seeing the second license plate on the front passenger floorboard, the officer was permitted to search the entire passenger compartment of Rodriguez's vehicle. As noted above, a search incident to arrest—where there is reason to believe evidence is in the vehicle—is narrower than a search authorized under the automobile exception.  *Gant*, 556 U.S. at 347.  The search incident to arrest exception requires that the officer is looking for evidence of the crime of arrest and not evidence of other crimes.  *Id.* at 346–47; *see also White*, 248 Md. App. at 97–98.  In a case involving the automobile exception, the Supreme Court has clarified that the scope of "[a] lawful search . . . generally extends to the entire area in which the object of the search may be found[.]"  *United States v. Ross*, 456 U.S. 798, 820 (1982).

Accordingly, in a warrantless search conducted under the search incident to arrest exception, an officer's search is limited to the passenger compartment and containers therein that may contain the evidence of the offense of arrest.  Thus, upon seeing some evidence of the offense of arrest in the vehicle, an officer is not automatically permitted to search the entire passenger compartment of the vehicle, including all containers and compartments therein.  The search must still be limited to containers and compartments which reasonably could contain the object of the officer's search—evidence of the crime of arrest.

## B. *Automobile Exception*

Rodriguez also argues that the search of his vehicle was not justified under the automobile exception. The State disagrees. Because we conclude that Cpl. McGroarty's search of Rodriguez's glove compartment was proper under *Gant*, we need not address whether the search was valid under the automobile exception. We reiterate only that the exceptions differ in key respects on the level of suspicion required, the need for an arrest, the scope of the search, and the type of evidence sought, as we explained above, *see supra* pp. 8–9, in our discussion of this Court's prior decision in *White v. State*. We also emphasize that "the scope of the search authorized [under the automobile exception] is broader" than under the search incident to arrest exception, and that both are limited to "any area of the vehicle in which the evidence [sought] might be found." *Gant*, 556 U.S. at 347.

## STATEMENT MADE TO POLICE

## A. *Applicable Fifth Amendment Principles*

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const., amend. V.[6] In *Miranda v. Arizona*, the U.S. Supreme Court announced that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the

---

[6] Article 22 of the Maryland Declaration of Rights also protects the right against self-incrimination. Rodriguez makes no separate argument under Article 22, however, so our analysis is based exclusively on the federal constitutional provision.

privilege against self-incrimination." 384 U.S. 436, 444 (1966). The Court went on to describe "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* (footnote omitted). The Court proceeded to announce the requirements which have come to be known as *Miranda* warnings:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Id.*

This Court has consistently held that the *Miranda* protections apply only to a "custodial interrogation" of a suspect. *E.g.*, *State v. Thomas*, 202 Md. App. 545, 565 (2011). The burden is on the defendant to "establish two things: (1) custody; and (2) interrogation." *Id.*[7] Whether a suspect is in custody is an objective determination based on "the circumstances surrounding the interrogation" and whether "a reasonable person [would] have felt he or she was at liberty to terminate the interrogation and leave." *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

The Supreme Court of Maryland has explained that "[i]n analyzing whether an individual is in custody for *Miranda* purposes, we ask, under the 'totality of the circumstances' of the particular interrogation, 'would a reasonable person have felt he or

---

[7] Since we decide that Rodriguez was not in custody for purposes of *Miranda*, we need not address the legal contours of the interrogation prong.

she was not at liberty to terminate the interrogation and leave.'" *Thomas v. State*, 429 Md. 246, 259 (2012) (quoting *Thompson*, 516 U.S. at 112). Further, the Supreme Court has outlined a number of non-exhaustive factors as relevant to the analysis of custody:

> when and where it occurred, how long it lasted, how many police were present, what the officers and the defendant said and did, the presence of actual physical restraint on the defendant or things equivalent to actual restraint such as drawn weapons or a guard stationed at the door, and whether the defendant was being questioned as a suspect or as a witness. Facts pertaining to events before the interrogation are also relevant, especially how the defendant got to the place of questioning whether he came completely on his own, in response to a police request or escorted by police officers. Finally, what happened after the interrogation whether the defendant left freely, was detained or arrested may assist the court in determining whether the defendant, as a reasonable person, would have felt free to break off the questioning.

*Id.* at 260–61 (quoting *Owens v. State*, 399 Md. 388, 429 (2007)).

However, not every restraint on freedom qualifies as being "in custody" for the purposes of *Miranda*. *Brown v. State*, 452 Md. 196, 211 (2017). Instead, the *Miranda* protections apply only where "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)).

For example, the *Miranda* safeguards are not required in the context of traffic stops unless "a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes[.]" *Id.* The U.S. Supreme Court explained in *Berkemer*:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the

circumstances that provoke suspicion." *United States v. Brignoni–Ponce*, 422 U.S. 873, 881 (1975). "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.'" *Ibid.* (quoting *Terry v. Ohio*, [392 U.S. 1, 29 (1968)])[.] Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of *Miranda*.

*Id.* at 439–40 (footnotes omitted).

Following the reasoning of *Berkemer*, the Supreme Court of Maryland and this Court have established that a "brief investigatory stop" does not usually implicate *Miranda*. *See State v. Rucker*, 374 Md. 199, 212 (2003) ("[T]he stop of Rucker was a brief investigatory stop and had remained so when Rucker told the police he had cocaine. Rucker was not in custody for purposes of *Miranda* because he was not restrained to a degree associated with a formal arrest."); *see also Allen v. State*, 158 Md. App. 194, 233 (2004) (declining to find a *Miranda* violation where the "brief encounters with appellant were of a limited nature and were made in a public place, during the day, without the use of any weapons or physical restraints"), *aff'd on other grounds*, 387 Md. 389 (2005); *Conboy v. State*, 155 Md. App. 353, 372 (2004) (relying on the public location, daylight, duration, presence of only one trooper, and lack of physical restraint to determine that an "investigatory stop had not evolved into a formal arrest" or a degree of restraint akin to a formal arrest).

### B. Parties' Contentions

Rodriguez argues that the circuit court erred in ruling that his encounter did not implicate *Miranda* because it was a mere accosting. According to Rodriguez, his statement that he bought the license plates from a friend was the product of custodial interrogation because he was not free to leave the encounter with Cpl. McGroarty. He relies on the following factors to support his argument that he was in custody: that the officer was in uniform, that the officer created an "uncomfortable tight squeeze" with his vehicle, that the officer impeded his path to his vehicle, and that the officer questioned him about the stolen license plates.

Rodriguez further argues that the encounter with the officer exceeded an accosting. Although the initial question about the ownership of Rodriguez's vehicle was general, the accusatory nature of the second question—where did Rodriguez obtain the license plates—elevated the encounter above an accosting. Additionally, Rodriguez contends that the encounter was custodial and not an accosting because the officer had probable cause to arrest him when he asked that question.

The State maintains that Rodriguez was not in custody when Cpl. McGroarty asked him how he obtained the license plates. According to the State, the totality of the circumstances indicated that Cpl. McGroarty's encounter with Rodriguez was not the equivalent of an arrest. Even if the encounter was more than an accosting, the State asserts that investigatory stops also do not implicate *Miranda* protections.

-24-

*C. Analysis*

It was Rodriguez's burden at the suppression hearing to demonstrate that he was entitled to *Miranda* warnings, requiring that he prove he was in police custody at the time he was questioned and that the questions amounted to a police interrogation. Based on the evidence established at the suppression hearing, we agree with the State that Rodriguez was not in custody for purposes of *Miranda* when he told Cpl. McGroarty that he bought the license plates from a friend. The totality of the circumstances does not rise to the level of restraint typically associated with a formal arrest.

This Court has previously denoted the various governmental intrusions from greatest to least amount of intrusion as (1) a stop, search, or arrest, pursuant to a warrant, (2) a warrantless stop, search, or arrest, (3) a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and (4) an accosting. *Reynolds v. State*, 130 Md. App. 304, 321 (1999). An accosting is an "[o]nly minimally intrusive governmental action resulting in no restriction of movement" and is "permitted as long as inquiry involves no show of authority and objective circumstances indicate a reasonable person would feel free to leave." *Id.*

The suppression court defined the interaction as an accosting and Rodriguez argues that the court erred in doing so. We do not think it is necessary to base this decision on whether Cpl. McGroarty's interaction with Rodriguez was a mere accosting or something greater. The term "accosting" is most often applied in Fourth Amendment cases analyzing whether a suspect has been arrested. *See Cornish v. State*, 215 Md. 64, 68 (1957) ("One is not arrested when he is approached by a police officer and merely questioned as to his identity and actions. This amounts to no more than an accosting."); *McChan v. State*, 238

Md. 149, 157 (1965) ("When one is approached by a police officer and merely questioned as to his identity and actions, this is only an accosting and not an arrest."); *Mack v. State*, 237 Md. App. 488, 494 (2018) (quoting *Pyon v. State*, 222 Md. App. 412, 421–22 (2015)) ("Fourth Amendment guarantees are not implicated in [an accosting or consensual encounter] . . . 'unless the police officer has by either physical force or show of authority restrained the person's liberty *so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter*.'").

However, our Courts have occasionally used the term when analyzing the requirements of *Miranda*. For instance, this Court has said,

> Under [the circumstances of an accosting], an individual suspected of committing a crime may be questioned while on the street, and not in an arrest status, without the necessity of first advising him of the constitutional protections afforded him under [*Miranda*] since that case has no application until "the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way."

*Morgan v. State*, 2 Md. App. 440, 442 (1967) (citation omitted). Likewise in *Duffy v. State*, the Supreme Court stated,

> An accosted suspect need not be advised that he has the right to the presence of counsel before the first question can be propounded because such a right does not exist. Nor must the State prove, in order that the response to such a question may come into evidence against the accused in court, that an accosted suspect was first advised that he has the right to remain silent. The exclusion principles enunciated in . . . [*Miranda*] are not applicable to a confession gleaned from a suspect who is merely accosted by the police, but deal instead with the safeguards which must be provided for an accused who is in police custody.

243 Md. 425, 431–32 (1966).

The Supreme Court and this Court have previously determined that brief investigatory stops often do not implicate *Miranda*. Thus, it logically follows that an accosting—as a lesser governmental intrusion than a *Terry* stop—will also not usually implicate *Miranda*. These classifications may be useful in analyzing *Miranda* because "the distinction between formal arrest or its equivalent, on the one hand," and other stops—such as an accosting or *Terry* stop—"on the other hand, is our most prominent criterion for distinguishing *Miranda*'s applicability from *Miranda*'s inapplicability." *Smith v. State*, 186 Md. App. 498, 528 (2009). The touchstone analysis, however, remains "whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest[.]" *See Rucker*, 374 Md. at 212.[8]

---

[8] The *Rucker* Court wrote that "[t]he Supreme Court, and this Court, have declared that brief, investigatory stops are not custodial for purposes of *Miranda*." *State v. Rucker*, 374 Md. 199, 218 (2003). *Rucker*, however, was later criticized by the Supreme Court of Maryland in *Longshore v. State* for failing to "accord the trial court finding [about the exchange between the police and defendant] any deference" and failing to "address, or seek to assess 'how a reasonable [person] . . . would have understood the situation.'" 399 Md. 486, 525 n.9 (2007). Indeed, *Berkemer*, while determining that traffic stops did not require *Miranda* warnings, also explained, "It is settled that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (citations omitted). The U.S. Supreme Court acknowledged that this would "mean that the police and lower courts will continue occasionally to have difficulty deciding exactly when a suspect has been taken into custody." *Id.* at 441. Thus, we think it is fairer to say that brief, investigatory stops are *usually* not custodial for purposes of *Miranda*, subject as always to the totality of the circumstances analysis.

Considering the facts established at the suppression hearing, the totality of circumstances does not indicate that Rodriguez was restrained to the degree associated with a formal arrest such that Cpl. McGroarty was required to provide *Miranda* warnings. The encounter occurred in the parking lot of a shopping center during daylight hours. Although Cpl. McGroarty's vehicle created a tight squeeze if Rodriguez were to try to leave in one direction, his vehicle was unimpeded from departure if he turned in the opposite direction. The encounter occurred on foot and was brief. There was no physical restraint or show of force by Cpl. McGroarty. There is nothing in these facts that indicates that the encounter was anything more than a brief, investigative stop. Without more, such a stop does not implicate *Miranda*.

Rodriguez argues that he was in custody because, after the officer had confirmed his ownership of the vehicle, the officer had probable cause to make an arrest, at which point he was not free to leave. The Supreme Court considered a similar argument in *Thomas v. State*, 429 Md. 246 (2012). In that case, the defendant had asked the Court to "adopt a presumption that an individual is in custody when 'police have sufficient evidence to make an arrest prior to questioning; the person knows this before being questioned; and the questioning then takes place away from public view inside a police station.'" *Id.* at 267. The Court rephrased his argument as being "that [the defendant] was in custody because he believed that police had enough evidence to arrest him." *Id.* The Court declined to adopt such a presumption, reasoning that "it is clear that his assumptions regarding the state of the evidence against him is irrelevant in a *Miranda* analysis." *Id.* Relying on *Berkemer v. McCarty*, 468 U.S. 420 (1984), and *United States v. Woods*, 720 F.2d 1022

-28-

(9th Cir. 1983), the Court went further and said that "[w]hether police officers have sufficient evidence to arrest, or believe they do, is irrelevant to a *Miranda* determination." *Thomas*, 429 Md. at 268.

Based upon *Thomas*, it is also irrelevant in this case whether Cpl. McGroarty had developed, or believed he had developed, probable cause to arrest Rodriguez based only on his assertion that he owned the vehicle. This is because the custody inquiry is an objective one, not based upon the subjective views of either the officer or the suspect. *Id.* at 267–68. As described above, a brief, investigative stop does not generally require an officer to administer *Miranda* warnings, but the circumstances of such a stop may progress to such a degree that the questioning becomes a custodial interrogation.

In this case, the totality of the circumstances indicate that Rodriguez was not restrained in a manner that resembled a formal arrest during the initial questions. Accordingly, Rodriguez was not in custody for purposes of *Miranda*, and Cpl. McGroarty was not required to administer *Miranda* warnings. The circuit court did not err in denying Rodriguez's motion to suppress his statement to the officer that he bought the license plates from a friend.

## CONCLUSION

The warrantless search of Rodriguez's vehicle was justified under the second rationale of *Arizona v. Gant* because Cpl. McGroarty had reason to believe the vehicle contained additional evidence of the crime for which Rodriguez was under arrest. Additionally, Rodriguez was not in custody for purposes of *Miranda* during the brief encounter when he told Cpl. McGroarty that he bought the stolen license plates from a

-29-

friend. Therefore, the judge at the suppression hearing did not err in denying the motions to suppress. For the foregoing reasons, we affirm the judgment of the Circuit Court for Anne Arundel County.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**