TAYLOR v. STATE (NO. 75, SEPT TERM. 2015)


Under *Arizona v. Gant*, 556 U.S. 332 (2009), when a police officer validly arrests a motorist for driving under the influence of alcohol, in the absence of facts indicating otherwise, the officer, based on his or her knowledge and experience, may reasonably conclude that open containers or other evidence bearing on the DUI offense may be present in the passenger compartment of the vehicle and conduct a search for such evidence, even though the defendant has been safely secured and has no access to the vehicle.

IN THE COURT OF APPEALS

OF MARYLAND

No. 75

September Term, 2015

EFRAIN TAYLOR

vs.

STATE OF MARYLAND

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Wilner, Alan M. (Retired, Specially
Assigned)

JJ.

Opinion by Wilner, J.

Filed: May 23, 2016

*Battaglia, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section
3A, she also participated in the decision and
adoption of this opinion.

Petitioner was convicted in the Circuit Court for Dorchester County of possession with intent to distribute cocaine and driving under the influence of alcohol. As a repeat drug offender, he was sentenced to a significant term in prison. His sole complaint in this appeal is that the search of his car following a traffic stop, which led to the discovery of the cocaine, was Constitutionally deficient. The trial court denied his motion to suppress the drugs and the Court of Special Appeals affirmed the ensuing judgment of conviction.

In reviewing a trial court's ruling on a motion to suppress, we defer to that court's findings of fact unless we determine them to be clearly erroneous, and, in making that determination, we view the evidence in a light most favorable to the party who prevailed on that issue, in this case the State. We review the trial court's conclusions of law, however, and its application of the law to the facts, without deference. *Varriale v. State*, 444 Md. 400, 410, 119 A.3d 824, 830 (2015), citing *Hailes v. State,* 442 Md. 488, 499, 113 A.3d 608, 614 (2015); *also Holt v. State*, 435 Md. 443, 457, 78 A.3d 415, 423 (2013). There were no material disputes regarding the relevant facts in this case. The issue is purely one of law – whether the officer's search of the car as an incident to appellant's arrest was permissible under the Supreme Court's holding in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed.2d 485 (2009) (hereafter *Gant*).

Officer Chad Mothersell, of the Cambridge Police Department, stopped petitioner at about 1:00 in the morning after observing him speeding and failing to stop at a stop sign. Although at trial, petitioner claimed he had not been speeding, the validity of the stop is not at issue in this appeal. Officer Mothersell – the only witness at the

suppression hearing – said that, when he approached the passenger side of the vehicle following the stop, he detected a minor odor of alcohol coming from petitioner's breath and person, even though petitioner was several feet away, in the driver's seat. Mothersell observed that petitioner's speech was slurred and hard to understand and that his eyes were bloodshot and glassy. When Mothersell asked for appellant's registration card, he was handed an insurance card. Petitioner said that he had been at the Point Break bar in Cambridge.

Mothersell had petitioner exit the car so he could perform standard field sobriety tests, which appellant did not complete successfully. At that point, he was placed under arrest for driving under the influence of alcohol. Just then, a backup officer arrived. Mothersell placed petitioner in the rear seat of his squad car to advise him of his rights regarding whether to take a breath test and, while that was happening, the backup officer searched appellant's car and found the cocaine inside the front seat center armrest.

Mothersell said that the sole purpose for the search was to locate any "other alcohol, open containers, anything pertaining to the DUI arrest." When asked, on cross examination, whether he had any reason to believe that there might be open containers in the car, he said that there was a "good possibility" – that he had "several DUI arrests where there's plenty of open containers left in the vehicle." On this evidence, defense counsel argued that, under *Gant*, the search was unlawful because there was no independent probable cause for such a search, which, he claimed, *Gant* requires. The court disagreed and, as noted, denied the motion to suppress.

The starting point for analyzing the validity of a warrantless search is the underlying precept that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Gant, supra*, 556 U.S. at 338, 129 S. Ct. at 1716, 173 L. Ed.2d at 493, quoting from *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed.2d 576, 585 (1967). One of those exceptions is a search incident to a valid arrest, which "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant,* 556 U.S. at 338, 129 S. Ct. at 1716, 173 L. Ed.2d at 493.

*Gant* was intended to clarify the scope of that exception in the context of a motor vehicle search. Mr. Gant was arrested for driving on a suspended license. After he had been handcuffed and locked in a police car, officers searched Gant's car and found cocaine in the pocket of a jacket on the back seat. The issue was whether such a search, under those circumstances, where it was virtually impossible for Gant to have accessed his car to retrieve either weapons or evidence, could be justified under the holdings in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed.2d 685 (1969) and *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed.2d 768 (1981), and the Court held that the search in that case could not be justified.

In *Chimel*, the Court limited the scope of a warrantless search incident to an arrest to the arrestee's person and the area within his or her "immediate control" – the area "from within which he [or she] might gain possession of a weapon or destructible

3

evidence." 395 U.S. at 763, 89 S. Ct. at 2034, 23 L. Ed.2d at 694.  *Belton* exposed some ambiguity in what the limitation of "immediate control" meant in the context of vehicle passenger compartment searches.  In *Belton,* an officer stopped a vehicle containing four occupants.  While asking for the operator's driver's license, he smelled burnt marijuana and observed an envelope in the vehicle marked "Supergold," a name he associated with marijuana.  Concluding that he had probable cause to believe that the occupants had committed a drug offense, he ordered them out of the car, placed them under arrest, patted them down, and separated them from each other, but did not handcuff them.  He then searched the car and found cocaine in the pocket of a jacket on the back seat.

The New York Court of Appeals held that, once the occupants were arrested, the car and its contents were safely in the exclusive control of the police and that the search therefore was unconstitutional.  The Supreme Court granted *certiorari* because it found that lower courts throughout the country had been unable to agree on a workable definition of "the area within the immediate control of the arrestee" when that area might include the interior of an automobile.  The *Belton* Court settled the issue – or thought that it had – by holding that, when an officer lawfully arrests the occupant of an automobile, the officer, as a contemporaneous incident of that arrest, may search the passenger compartment of the car and any containers therein.  That conclusion was based on the assumption that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within the area

into which an arrestee might reach." *Belton*, 453 U.S. at 460, 101 S. Ct. at 2864, 69 L. Ed.2d at 774-75.

*Belton* did not solve the problem. As the Court noted in *Gant, Belton* had "been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." The *Gant* Court rejected that view which, it said, would "untether the rule from the justifications underlying the *Chimel* exception," and held instead that the "*Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, at 343, 129 S. Ct. at 1719, 173 L. Ed.2d at 496.

Had the Court stopped there, we would be obliged to reverse the suppression order of the trial court in this case, as petitioner urges us to do. But the Court did not stop there. In the very next sentence, it added that, although it does not follow from *Chimel*, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence **relevant to the crime of arrest** might be found in the vehicle.'" *Id*, quoting from Justice Scalia's concurring Opinion in *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137, 158 L. Ed.2d 905, 920 (2004) (Emphasis added). That is the holding relevant to this case. We are not concerned with the *Chimel* "wingspan" but with whether Officer Mothersell reasonably could have

5

believed that evidence relevant to the crime of driving under the influence of alcohol – the crime for which petitioner was arrested – might be found in the vehicle.

The *Gant* Court noted that, in many cases when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe that the vehicle contains further relevant evidence of that offense, but that in other cases, including *Belton* and *Thornton*, "the **offense of arrest** will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant,* at 344, 129 S. Ct. at 1719, 173 L. Ed.2d at 496 (Emphasis added). Gant was arrested for driving on a suspended license, an offense for which, on the record in that case, the police could not reasonably expect to find any further evidence in the passenger compartment; hence, there was no basis for the search. Belton and Thornton, on the other hand, were arrested for drug violations, for which there was a greater expectation of finding further evidence in the vehicle.

The issue here, of course, is whether an arrest for driving under the influence of alcohol, under the circumstances of this case, can reasonably lead to an expectation that further evidence **of that offense may** be found in the passenger compartment. Petitioner argues that what the Supreme Court must have meant when it defined the standard for conducting a vehicle search as an incident to a lawful arrest as whether it is "reasonable to believe evidence of the crime of arrest might be found in the vehicle" is that the officer must have a "reasonable articulable suspicion" in that regard – the same level of suspicion that would justify a temporary investigative detention or a frisk for weapons.

Having equated "reasonable to believe" with reasonable articulable suspicion, petitioner contends that reasonable articulable suspicion cannot be based on or tied to the nature of the crime for which the defendant was arrested because, if that were so, it would allow the police *carte blanche* authority to search vehicles without any reasonable articulable suspicion for one category of crimes but not for another. He accuses the State of positing a *per se* rule -- a "dichotomy" between offenses that may yield physical evidence and offenses that may not, which, he contends, "relies on a hyper-literal reading of *Gant* that ignores the abhorrence of suspicionless searches for evidence and the rejection of general searches incident to arrest."

Petitioner's argument raises a fair question of what, exactly, the *Gant* Court meant in holding that the police may search the vehicle when it is "reasonable to believe" that evidence of the crime for which the defendant was arrested may be discovered and coupling that with the observation that some offenses "will supply a basis for searching the passenger compartment" while others will not. Did the Court intend "reasonable to believe" to be the equivalent of "reasonable articulable suspicion," and, if it did, why did it not simply use the latter term, which it had created and was already well-known to the judicial and law enforcement community? Whether it did or did not intend such equivalence, was its immediately ensuing language meant to suggest that certain crimes will, **of themselves**, supply a right to conduct the search, without any independent basis for a reasonable suspicion that further evidence of the crime may be found in the vehicle?

7

In *State v. Ewertz*, 305 P.3d 23, 26-27 (Kan. App. 2013), the Kansas court noted that courts had, indeed, taken two different approaches on the issue – one interpreting "reasonable to believe" as creating "an almost categorical link between the nature of the crime of arrest and the right to search," and the other interpreting that language as "akin to reasonable suspicion," citing *People v. Nattoli*, 199 Cal. App.4th 531, 553 (2011) as exemplifying the first approach and *United States v. Taylor*, 49 A.3d 818, 822-24 (D.C. 2012) and *People v. Chamberlain*, 229 P.3d 1054, 1057 (Colo. 2010) as supporting the second. Ultimately, the Supreme Court may need to clarify what it meant and, given the vast number of traffic stops that occur every day throughout the country, we hope that it will do so.

We do know that other courts have sustained passenger compartment searches, under *Gant*, following an arrest for driving under the influence or driving while intoxicated, on the premise that there is reason to believe that other evidence of that offense may be found in the vehicle. *See State v. Cantrell*, 233 P.3d 178 (Idaho App. 2010); *State v. Ewertz, supra*, 305 P.3d 23; *Cain v. State*. 373 S.W.3d 392 (Ark. App. 2010); *United States v. Washington*, 670 F.3d 1321 (D.C. Cir. 2012); and *United States v. Oliva,* 2009 WL 1918458 (U.S.Dist. Ct. S.D. Texas (2009) (unreported).

We agree with that result in this case, but not on the basis of any *per se* right to search founded solely on the nature of the offense. We conclude that the "reasonable to believe" standard is the equivalent of reasonable articulable suspicion because we cannot discern any logical difference between the two. If a police officer has a reasonable

suspicion that he or she can articulate that something is so, then perforce it is reasonable for the officer to believe that it may be so and *vice versa*. But that suspicion, to be reasonable, must have some basis in fact.

In this case there was, and, we suspect, in most cases of an arrest for driving under the influence, there is likely to be, a basis in fact – the arresting officer's own prior experiences or his or her knowledge of the experience of fellow officers, which can be articulated, of finding open containers or other evidence related to the offense inside the passenger compartment. It is a solid part of "reasonable articulable suspicion" law that reasonable suspicion may be derived from an officer's own experience or his or her knowledge of the experience of other officers. *See Holt v. State*, 435 Md. 443, 461, 78 A.3d 415, 425 (2013), noting the statement in *United States v. Cortez,* 449 U.S. 411, 418, 101 S. Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981) that evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement" and concluding that the court must "assess the evidence through the prism of an experienced law enforcement officer, and give due deference to the training and experience of [the officer]."

On this basis, we shall affirm the judgment of the Court of Special Appeals.[1]

> JUDGMENT OF COURT OF SPECIAL APPEALS
> AFFIRMED; PETITIONER TO PAY THE COSTS.

---

[1] The Court of Special Appeals, though affirming the judgment of conviction entered in the Circuit Court, remanded the case for resentencing. That aspect of the intermediate appellate court's judgment is not before us.

9