*Levar Montez Brown v. State of Maryland,* No. 2103, September Term, 2022. Opinion by Graeff, J.

**ARREST — SEARCHES AND SEIZURES**

The police had probable cause to arrest the defendant for driving under the influence (DUI) based on the officer's smell of the odor of alcohol, defendant's admission to drinking a large amount of an alcoholic beverage, and defendant's flight from police.

The police properly conducted a search of appellant's vehicle incident to arrest. The officer had a reasonable belief that evidence of DUI might be found in the vehicle based on appellant's flight after the traffic stop and the smell of alcohol on appellant, who admitted that he had consumed a half pint of D'ussé alcohol. Given these circumstances, the officer could reasonably believe that the remainder of the pint was inside the vehicle.

Circuit Court for Anne Arundel County
Case No. C-02-CR-22-000861

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2103

September Term, 2022

_____

LEVAR MONTEZ BROWN

v.

STATE OF MARYLAND

_____

Graeff,
Albright,
Meredith, Timothy E.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: March 1, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Levar Brown, appellant, was charged in the Circuit Court for Anne Arundel County with possession with the intent to distribute a controlled dangerous substance, as well as handgun and driving offenses. Appellant subsequently filed a motion to suppress, which the court denied. Appellant then entered a conditional plea of guilty on the charge of possession with the intent to distribute, and the State entered a *nolle prosequi* on each of the remaining counts.[1]

On appeal, appellant presents one question for this Court's review, which we have revised slightly, as follows:

> Did the court err in denying the motion to suppress the crack cocaine and handgun found in appellant's vehicle?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2023, the court held a suppression hearing. Officer Wesley Harris, a member of the Anne Arundel County Police Department, testified that, on June 11, 2021, at approximately 3:00 a.m., he was on patrol in Severn, Maryland, and he saw a silver Infiniti sedan that did not have its registration light illuminated. He activated his emergency lights and initiated a traffic stop. He did not observe the vehicle commit any

---

[1] Under Maryland Rule 4-242(d)(2), a "defendant may enter a conditional plea of guilty" and "reserve the right to appeal one or more issues specified in the plea that (A) were raised by and determined adversely to the defendant, and, (B) if determined in the defendant's favor would have been dispositive of the case." Appellant reserved the right to appeal the issue presented here.

other traffic-related infractions; his sole purpose for initiating the traffic stop was because the vehicle's registration plate was not illuminated.[2]

The vehicle pulled into a residential area and backed into a parking space. Officer Harris observed the occupant, whom he identified as appellant, exit the vehicle. The recording from Officer Harris's body-worn camera was played, and it showed that Officer Harris instructed appellant to remain in the vehicle. Appellant kept walking toward Officer Harris and stated: "I don't have my license." When Officer Harris reiterated that appellant should remain in the vehicle, appellant "took off" on foot. Officer Harris ran after appellant. Appellant then stumbled and fell, and, with some difficulty, Officer Harris placed appellant in handcuffs. Officer Harris questioned appellant's actions, stating: "All this for a fucking license? Are you stupid?" Appellant responded: "Because I don't want to go to jail, man."

Officer Harris escorted appellant back to his patrol vehicle. The body-worn camera recording reflects that the following colloquy then occurred:

| | |
|---|---|
| OFFICER HARRIS: | You ran from me because you was [sic] drinking. I can smell it on your breath. How much have you had to drink tonight? |
| APPELLANT: | A lot, man. |
| OFFICER HARRIS: | What is "a lot"? |
| APPELLANT: | Like, a half (indiscernible.) |

\* \* \*

---

[2] Md. Code Ann., Transportation ("TR") § 22-204(f) (2020 Repl. Vol.) governs the requirements for the illumination of a rear registration plate. There is no argument on appeal that the initial stop was improper.

OFFICER HARRIS:          Half a pint of what?

APPELLANT:              D'usse.

Officer Harris testified that, based on his "training, knowledge, and experience as a police officer," he knew that D'ussé is a cognac, an alcoholic beverage. At that point, appellant was placed under arrest for driving under the influence.

On cross-examination, defense counsel elicited testimony that Officer Harris did not conduct any field sobriety tests. Appellant did not have bloodshot eyes or slurred speech, and he was coherent and alert during their interaction.

Officer Harris returned to appellant's vehicle to conduct a search "for subsequent evidence of the driving under the influence." Prior to conducting the search, officers looked through the windows using their flashlights. Officer Harris did not observe any open containers, cups, or liquids inside the vehicle at that time, and when he opened the vehicle's door, he did not detect "a smell of alcohol emanating from the car."

Officer Harris then searched appellant's vehicle. He found a plastic bag containing 71 smaller plastic baggies, which contained an "off-white rocky substance" that he knew, based on his "training, knowledge, and experience," to be crack cocaine. Another officer found a handgun inside the glove compartment.

On January 3, 2023, appellant filed a motion to suppress evidence, alleging that Officer Harris's search of the vehicle was unconstitutional and did not fall within the search incident to arrest exception to the warrant doctrine. Relying principally on *Arizona v. Gant*, 556 U.S. 332 (2009), appellant argued that, because he was "handcuffed and secured well

3

before the search" and "was approximately 7–10 feet away" from the vehicle, Officer Harris could not have reasonably believed that evidence of driving under the influence might be found in the vehicle. Appellant also argued at the hearing that the arrest for driving while under the influence of alcohol was not lawful. Appellant sought to suppress all evidence found during the search.

The State argued that Officer Harris had probable cause to arrest appellant for driving under the influence of alcohol, and the subsequent warrantless search of the vehicle, incident to that arrest, was lawful. Citing *Taylor v. State*, 224 Md. App. 476 (2015), *aff'd*, 448 Md. 242 (2016), *cert. denied*, 580 U.S. 1216 (2017), the State argued that, "when someone is arrested under the suspicion that they're driving while impaired or driving under the influence of alcohol, there is pretty much always going to be reason to believe that evidence of the crime would be found in the vehicle; namely, alcoholic beverages."

The court denied appellant's motion to suppress. After finding that there was a permissible stop based on a violation of the transportation code, the court discussed the validity of the arrest. It found probable cause for the arrest based on the facts that Officer Harris smelled alcohol, that appellant told him he had been drinking, and that appellant fled from the vehicle. The court then addressed whether "the vehicle contain[ed] evidence of the offense of the arrest." It found that it was "reasonable for the search to occur" based on "the smell of alcohol, the statement that – what had been consumed." Accordingly, it denied the motion to suppress.

This appeal followed.

## STANDARD OF REVIEW

This Court has described the applicable standard of review for a motion to suppress as follows:

> When reviewing a circuit court's denial of a motion to suppress evidence, we are "limited to the record developed at the suppression hearing." *Moats v. State*, 455 Md. 682, 694, 168 A.3d 952 (2017). "We review the evidence and the inferences drawn therefrom in the light most favorable to the prevailing party." *Thornton v. State*, 465 Md. 122, 139, 214 A.3d 34 (2019). As a "mixed question of law and fact[,]" we accept "the hearing court's finding of fact unless they are clearly erroneous" but "review the hearing judge's legal conclusions *de novo*[.]" *Id.* (citations omitted). Thus, we independently evaluate without deference to the circuit court whether a police officer's conduct violated the constitutional rights of the defendant. *Sizer v. State*, 456 Md. 350, 362, 174 A.3d 326 (2017).

*Rodriguez v. State*, 258 Md. App. 104, 114–15 (2023) (alteration in original).

## DISCUSSION

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment, however, does not prohibit all searches; it proscribes only those that are unreasonable. *Riley v. California*, 573 U.S. 373, 381 (2014). Thus, in determining whether a search is constitutional, a court must determine if it is reasonable. *Maryland v. King*, 569 U.S. 435, 447 (2013) ("'[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'") (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995)).

The general rule is that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated

5

exceptions.'" *Gant*, 556 U.S. at 338 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). *Accord Rodriguez*, 258 Md. App. at 115. Appellant contends that the warrantless search of his vehicle was unconstitutional, in violation of the Fourth Amendment.

As the State notes, however, one exception to the warrant requirement "is a search incident to a valid arrest." *Taylor*, 448 Md. at 246. There are two steps involved in determining the reasonableness of a search incident to a warrantless arrest. First, we must determine whether there was a valid arrest, i.e., did the police have probable cause to support the arrest. *See Lewis v. State*, 470 Md. 1, 20 (2020); *Donaldson v. State*, 416 Md. 467, 481 (2010); *Rodriguez*, 258 Md. App. at 120–21. Second, if the first step is satisfied, we determine whether the subsequent search was a proper search incident to arrest.

Appellant contends that the State failed in its proof for each of these steps. As explained below, we disagree.

## I.

### Probable Cause for Appellant's Arrest

Appellant contends that the court erred in denying his motion to suppress the items seized from the vehicle because Officer Harris did not have probable cause to support his arrest. He asserts that the only two factors Officer Harris identified, i.e., his admission that he drank "a lot" of alcohol, and that Officer Harris detected the odor of alcohol on his breath, were insufficient "as a matter of law, to constitute probable cause for arrest."

The State contends that the suppression court properly determined that Officer Harris had probable cause to arrest appellant. It points to three facts providing probable cause for an arrest for driving under the influence: (1) appellant's flight after exiting his

6

vehicle; (2) Officer Harris's observation of alcohol on appellant's breath; and (3) appellant's statement that he had "a lot" to drink, i.e., a half a pint of cognac.

An officer may arrest an individual without a warrant if he or she has probable cause to believe that the individual has committed a felony or misdemeanor in his or her presence. *Lewis*, 470 Md. at 22. "To determine whether an officer had probable cause to arrest an individual, we examine the events *leading up* to the arrest, and then decide 'whether these historical facts, viewed from the stand-point of an objectively reasonable police officer, amount to' probable cause." *Pacheco v. State*, 465 Md. 311, 331 (2019) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

"Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Freeman v. State*, 249 Md. App. 269, 276 (2021) (quoting *Jackson v. State*, 81 Md. App. 687, 692 (1990)). It is a "'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Bowling v. State*, 227 Md. App. 460, 468 (quoting *Pringle*, 540 U.S. at 370), *cert. denied*, 448 Md. 724 (2016).

"Probable cause, moreover, is a 'fluid concept,' 'incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.'" *Pacheco*, 465 Md. at 324 (quoting *McCracken v. State*, 429 Md. 507, 519–20 (2012)). "To determine whether probable cause exists, 'the reviewing court necessarily must relate the information known to the officer to the elements

of the offense that the officer believed was being or had been committed.'" *McCormick v. State*, 211 Md. App. 261, 269 (2013) (quoting *Belote v. State*, 199 Md. App. 46, 54 (2011)). "Probable cause 'is not a high bar.'" *Freeman*, 249 Md. App. at 302 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).

The question here is whether Officer Harris had probable cause to believe that appellant drove a vehicle while under the influence of alcohol. *See* Md. Code Ann., Transportation ("TR") § 21-902(a)(1)(i) (2020 Repl. Vol.) ("A person may not drive or attempt to drive any vehicle while under the influence of alcohol."). "[T]o justify a warrantless arrest the police must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion." *Bailey v. State*, 412 Md. 349, 375 (2010) (quoting *State v. Wallace*, 372 Md. 137, 148 (2002)).

Appellant contends that "evidence of possible intoxication, alone, is insufficient to arrest for DUI," and "courts generally require the odor of alcohol and/or an admission to drinking *plus* poor driving or failed sobriety tests . . . to arrest on suspicion of DUI." In support, appellant cites *People v. Day*, 67 N.E. 3d 607, 616 (Ill. App. Ct. 2016), where the Appellate Court of Illinois, Third District, held that, although "[t]he fact that the defendant consumed alcohol and had glassy and bloodshot eyes is certainly probative of impairment," as was the defendant's failure to "perfectly follow test instructions," any suspicions due to

8

those factors, "unless confirmed by some other factor—such as poor driving, stumbling, falling, or an inability to communicate clearly" do not "rise to the level of probable cause." Appellant asserts that, because there was no evidence of poor driving, poor performance on field sobriety tests, slurred speech, or bloodshot eyes, Officer Harris did not have probable cause to arrest him.[3]

It is important to note that, in addressing probable cause, we look at the totality of the circumstances. *State v. Johnson*, 458 Md. 519, 534–35 (2018). The absence of a fact that supported probable cause in one case does not preclude a finding of probable cause in this case.

*Commonwealth v. Salter*, 121 A.3d 987 (Pa. Super. Ct. 2015), illustrates the fallacy in appellant's reasoning that the absence of certain factors necessarily precludes a finding of probable cause. In that case, police initiated a traffic stop because, as here, the defendant's "license plate was not illuminated." *Id.* at 991. The officer smelled the odor of alcohol emanating from the vehicle, and the driver had bloodshot/glassy eyes, stated that she had two glasses of wine, and performed poorly on the sobriety tests. *Id.* at 995. The trial court found that the officer did not have probable cause to arrest, highlighting that the officer "did not observe erratic driving and slurred speech." *Id.* The Superior Court of Pennsylvania reversed, stating that "[e]rratic driving is not a super-factor," and it "is not a

---

[3] In his brief, appellant states: "Mr. Brown drove remarkably well before the traffic stop, even successfully backing into a parking spot without incident." At oral argument, counsel for appellant emphasized appellant's ability to park the vehicle by backing it into a parking spot correctly. Our review of the body camera footage, however, shows that appellant failed to park his vehicle in a designated spot. Instead, the vehicle occupied two parking spaces.

necessary precursor" to a finding of driving under the influence. *Id.* Rather, "[t]he applicable standard for determining probable cause calls for a totality of circumstances analysis, not a mechanical consideration of specific factors." *Id.*

Here, considering the totality of the circumstances, there was probable cause to arrest appellant. After Officer Harris initiated a valid traffic stop, appellant got out of his vehicle. Officer Harris asked appellant to remain in his vehicle. Appellant stated that he did not have his license and attempted to flee on foot. After Officer Harris apprehended appellant, he smelled alcohol on appellant's breath and said: "[Y]ou ran from me because you [were] drinking." Under these circumstances, it was reasonable for Officer Harris to conclude, after smelling alcohol on appellant's breath, that appellant's flight was evidence of his consciousness of guilt of driving under the influence. *See Decker v. State*, 408 Md. 631, 640 (2009) (consciousness of guilt evidence can take various forms, including flight). *Accord Washington v. State*, 482 Md. 395, 449 (2022) (unprovoked, headlong flight "may allow an inference of suspicion").[4]

---

[4] Although Officer Harris did not describe the flight as "headlong flight," i.e., sudden or without deliberation, *Washington v. State*, 482 Md. 395, 449 (2022), the body camera video showed that the flight was sudden and an attempt to evade the police. Appellant argues that his flight may have been due to the drugs and gun in the car, and therefore, his flight was irrelevant to probable cause that he was driving while intoxicated. Although we know now that there were various reasons why appellant may have run, we look at the circumstances confronting Officer Harris at the time of the arrest. *See State v. Hummel*, 796 N.E. 2d 558, 564 (Ohio Ct. App. 2003) (although Hummel's "slurred speech and glassy eyes could be attributed to his serious head injuries[,]" "probable cause is based upon the arresting officer's knowledge and perceptions existing at the time of the arrest"). At the time of arrest, it was reasonable for Officer Harris to believe that appellant's flight was evidence of consciousness of guilt of driving under the influence.

In addition to Officer Harris smelling the odor of alcohol, and appellant's flight, appellant admitted that he had been drinking. He told Officer Harris that he drank "a lot," a half pint of cognac.

We hold that, based on the officer's smell of the odor of alcohol, appellant's statement that he drank a large amount of an alcoholic beverage with a high alcohol content,[5] and appellant's flight from the police, Officer Harris had a sufficient basis to reasonably believe that appellant was driving under the influence of alcohol. The circuit court properly concluded that Officer Harris had probable cause to suspect that appellant was driving while under the influence of alcohol in violation of TR § 21-902(a)(1)(i).

## II.

### Search Incident to Arrest Exception

Appellant next argues that, even if probable cause existed to arrest him for driving under the influence, the subsequent search was not a proper search incident to arrest because Officer Harris did not have reason to believe that evidence relevant to the crime of arrest might be found in the vehicle. He further argues that, even if Officer Harris did have reason to believe such evidence would be found in the vehicle, he "did not articulate it such that this Court can review it."

---

[5] *Compare* D'ussé, https://www.dusse.com (last visited Jan. 30, 2024), archived at: https://perma.cc/7JJ5-HLD5 (D'ussé VSOP and XO each contain 40% alcohol by volume), *with* 48 C.J.S. INTOXICATING LIQUORS § 15 (Aug. 2023) (cataloging cases and various state statutes noting that "beer" contains a range of alcohol between 3.2% and 4.01% alcohol by volume).

The State contends that Officer Harris's search of appellant's vehicle was a proper search incident to arrest because the police had "some basis in fact" to suspect that appellant's vehicle contained additional evidence of driving under the influence of alcohol. It notes that appellant advised Officer Harris that he had drunk "half a pint" of an alcoholic beverage, a type of alcohol commonly purchased in a bottle that might be carried in a vehicle. The State acknowledges that Officer Harris did not specifically articulate why he believed he would find evidence of driving under the influence in appellant's vehicle, but it asserts that such testimony was not critical in this case because the reasonableness of a search requires an objective analysis, and the facts here support a finding that there was "some basis in fact" for a search incident to the arrest.

The search incident to arrest exception "'derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.'" *Taylor*, 448 Md. at 246 (quoting *Gant*, 556 U.S. at 338). In *New York v. Belton*, 453 U.S. 454, 460 (1981), the United States Supreme Court held that, once a police officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton* had been interpreted "to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Taylor*, 448 Md. at 247 (quoting *Gant*, 556 U.S. at 343).

In *Gant*, 556 U.S. at 346, the Court revisited the bright-line rule of *Belton* and revised the search incident to arrest exception with respect to a vehicle. The Court held that a search of a vehicle, incident to an arrest, is permitted when (1) "an arrestee is within

12

reaching distance of the vehicle," or (2) because of circumstances "unique to the vehicle context," *id.* at 343, "it is reasonable to believe the vehicle contains evidence of the offense of arrest," *id.* (quoting *Thornton*, 541 U.S. at 632).

In *Gant*, the defendant was arrested for driving on a suspended license, handcuffed, and placed in a patrol car. *Id.* at 335. The police searched his car and found cocaine in the pocket of a jacket. *Id.* The Court held that the warrantless search of Gant's car was unconstitutional because Gant was not within reaching distance of his car at the time of the search, and there was no "evidentiary basis" for the search because the police could not expect to find evidence of the offense of the arrest of driving with a suspended license in the passenger compartment of the car. *Id.* at 344.

Here, where appellant was handcuffed and held outside of reaching distance of the vehicle, the first prong of the *Gant* test is not present. The State does not argue to the contrary.

The issue in this case involves the second prong of the *Gant* test, whether it was reasonable to believe that evidence of driving under the influence of alcohol might be found in the vehicle. The Supreme Court's discussion of this analysis was limited. It stated:

> In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Gant*, 556 U.S. at 343–44 (citations omitted).[6]

---

[6] The arrests in *New York v. Belton*, 453 U.S. 454, 456 (1981), and *Thornton v. United States*, 541 U.S. 615, 618 (2004), were for drug violations.

13

In *Taylor*, the Supreme Court of Maryland addressed the meaning of this limited holding and what the

> *Gant* Court meant in holding that the police may search the vehicle when it is "reasonable to believe" that evidence of the crime for which the defendant was arrested may be discovered and coupling that with the observation that some offenses "will supply a basis for searching the passenger compartment" while others will not.

448 Md. at 249. The Court noted two questions that were generated by *Gant*: (1) was "reasonable to believe" the equivalent of "reasonable articulable suspicion," and if so, (2) was the subsequent language used "meant to suggest that certain crimes will, **of themselves**, supply a right to conduct the search, without any independent basis for a reasonable suspicion that further evidence of the crime may be found in the vehicle?" *Id.* (emphasis added). The Supreme Court of Maryland noted that courts in other jurisdictions had taken different approaches on the issue, and "[u]ltimately, the Supreme Court may need to clarify what it meant." *Id.* at 250. *Accord United States v. Thomas*, 434 F. Supp. 3d 576, 584 (W.D. Ky. 2020) (The Supreme Court's failure to clarify the meaning of the phrase "reasonable to believe" has led to confusion "among the lower federal courts and various state courts."); *United States v. Reagan*, 713 F. Supp. 2d 724, 727–28 (E.D. Tenn. 2010) (The Supreme Court's failure to clarify when it is reasonable to believe that a vehicle contains evidence of the offense of arrest "has led to confusion among the lower federal courts and various state courts.").

Courts have "taken two different approaches on the issue." *Taylor*, 448 Md. at 250. Some courts interpret "reasonable to believe" as establishing "an almost categorical link between the nature of the crime of arrest and the right to search." *Id.* (quoting *State v.*

14

*Ewertz*, 305 P.3d 23, 26–27 (Kan. Ct. App. 2013)). *Accord People v. Kessler*, 436 P.3d 550, 556 (Colo. App. 2018) (noting that some courts use the "categorical approach"); *Brown v. State*, 24 So. 3d 671, 678 (Fla. Dist. Ct. App. 2009), *cert. denied,* 573 U.S. 908 (2014) ("the 'reasonable belief that evidence might be found' prong of *Gant* can be satisfied solely from the inference that might be drawn from the nature of the offense of arrest itself" (quoting *Thornton*, 541 U.S. at 629)). Using this categorical approach, some courts have concluded that the offense of driving under the influence is, by its nature, a crime for which an officer would have reason to believe relevant evidence may be found in the vehicle. *See, e.g.*, *Cain v. State*, 373 S.W.3d 392, 397 (Ark. Ct. App. 2010) (where arrest for DWI, search of car pursuant to *Gant* was permissible because "an open container of alcohol could have been found in appellant's vehicle"); *State v. Cantrell*, 233 P.3d 178, 184 (Idaho Ct. App. 2010) ("DUI is 'an offense for which police could . . . expect to find evidence in the passenger compartment.'") (quoting *Gant*, 556 U.S. at 344).

Other courts have declined to adopt the categorical approach and adopt instead a "reasonableness approach," looking at the totality of the circumstances "to determine whether it was reasonable to conclude that evidence of the crime of the arrest might be found within the vehicle." *State v. Coffee*, 943 N.W.2d 845, 852 (Wis. 2020), *cert. denied*, 141 S. Ct. 1094 (2021). *Accord Reagan*, 713 F. Supp. 2d at 733 (DUI stop will not supply a basis for a warrantless search, but "police may search the passenger compartment . . . when there is a particularized and articulable reason to believe that evidence of DUI is contained inside."); *United States v. Taylor*, 49 A.3d 818, 824 (D.C. 2012) ("[O]fficers

must have reasonable, articulable suspicion to conduct a vehicle search under the second prong of *Gant*.").

In *Taylor*, the Supreme Court of Maryland adopted the reasonableness approach. 448 Md. at 250–51. It stated that it would uphold a search of a car incident to an arrest for driving under the influence, but it clarified that it was "not on the basis of any *per se* right to search founded solely on the nature of the offense." *Id.* at 250. Rather, the Court concluded that the "reasonable to believe standard" was the equivalent of reasonable articulable suspicion. *Id.* The Court stated: "If a police officer has a reasonable suspicion that he or she can articulate that something is so, then perforce it is reasonable for the officer to believe that it may be so and *vice versa*. But that suspicion, to be reasonable, must have some basis in fact." *Id.*

Reasonable suspicion "is not a demanding standard, but it does require more than an 'unparticularized suspicion or hunch.'" *Holt v. State*, 435 Md. 443, 448 (2013) (quoting *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968)). "There is no standardized test governing what constitutes reasonable suspicion." *Holt*, 435 Md. at 459 (quoting *Crosby v. State*, 408 Md. 490, 507 (2009)). "Reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *Cunningham v. Baltimore Cnty.*, 246 Md. App. 630, 677 (quoting *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006)), *cert. denied*, 471 Md. 268 (2020).

In *Taylor*, the police stopped the defendant for speeding and failing to stop at a stop sign. *Id.* at 245. When the officer approached the passenger side of the vehicle, he detected a minor odor of alcohol on Taylor's person. *Id.* Taylor's speech was slurred, and his eyes

were bloodshot. *Id.* After Taylor failed to successfully complete field sobriety tests, he was placed under arrest. *Id.* The officer stated that he then searched Taylor's car to locate "other alcohol, open containers, anything pertaining to the DUI arrest," noting that he had reason to believe there might be open containers in the car based on his experience in other DUI arrests. *Id.* In upholding the search of the vehicle, the Court stated that:

> [T]here was, and, we suspect, in most cases of an arrest for driving under the influence, there is likely to be, a basis in fact—the arresting officer's own prior experiences or his or her knowledge of the experience of fellow officers, which can be articulated, of finding open containers or other evidence related to the offense inside the passenger compartment.

*Id.* at 250–51.

Thus, in this case, pursuant to *Taylor*, we apply the reasonableness approach as opposed to the categorical approach in determining whether it was reasonable to believe that evidence of DUI would be found in the car. That does not mean, however, that the nature of the offense is irrelevant. In *Gant*, 556 U.S. at 344, the Court stated that, in some cases, such as the possession of drugs involved in *Belton*, the offense of arrest would provide a basis for searching the car. And, as indicated, the Court in *Taylor*, 448 Md. at 250, noted that, "in most cases of an arrest for driving under the influence, there is likely to be, a basis in fact" for finding evidence related to the offense in the car.[7]

Here, looking at the totality of the circumstances, including the nature of the offense, we conclude that Officer Harris had reasonable suspicion to believe that evidence of the

---

[7] In *United States v. Reagan*, 713 F. Supp. 2d 724, 732 (E.D. Tenn. 2010), the court noted a factual scenario where the police see a customer drinking several beers in a bar in a short time and then drive away, stating that, in that circumstance, it would not be reasonable to believe that evidence of DUI would be found in the vehicle.

offense of driving under the influence might be found in the car. Initially, after appellant pulled over, he parked and immediately exited his vehicle and walked toward the officer. This immediate exit from his vehicle "could indicate that he was trying to distance himself from something in the vehicle" that he did not want the police to discover. *Coffee*, 943 N.W.2d at 857. When Officer Harris directed appellant to remain in his vehicle, appellant fled on foot, which could be construed as a further indication that he was trying to distance himself from the vehicle. Moreover, Officer Harris smelled the odor of alcohol on appellant, who admitted that he had consumed a half pint of D'ussé alcohol. Officer Harris could reasonably believe that the remainder of the pint was inside the vehicle. As the State noted in oral argument, a person does not typically order a half pint of cognac at a restaurant or bar.

To be sure, Officer Harris did not specify that these were his reasons to believe that evidence of driving under the influence would be found in the car. He merely testified that he was in the process of securing appellant so he could "search his car for subsequent evidence of the driving under the influence." The reasonableness of a search, however, "does not depend on the officer's subjective motivations." *Rodriguez*, 258 Md. App. at 123 (quoting *United States v. Edwards*, 769 F.3d 509, 516 (7th Cir. 2014)). Instead, the inquiry is objective, and "[w]e 'look to the record as a whole to determine what facts were known to the officer and then consider *whether a reasonable officer in those circumstances would have been suspicious.*'" *Edwards,* 769 F.3d at 516 (quoting *United States v. Tinnie*, 629 F.3d 749, 753 (7th Cir. 2011)).

Based on the totality of the circumstances, we hold that Officer Harris had an objectively reasonable basis for believing that further evidence of the offense of driving under the influence might be inside the vehicle. Accordingly, the search was a proper search incident to arrest, and the circuit court properly denied the motion to suppress.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2103s22cn.pdf